# EXHIBIT A

| | | |
|---|---|---|
| RETURN DATE: 9/21/2021 | : | SUPERIOR COURT |
| MARIA RIVERA | : | J.D. OF MIDDLETOWN |
| v. | : | |
| RAYTHEON TECHNOLOGIES CORPORATION | : | SEPTEMBER 1, 2021 |

## COMPLAINT

1. This is an action pursuant to the Connecticut Fair Employment Practices Act, Conn. Gen. Stat §§ 46a-60(b)(1), 46a-60(b)(4), and 46a-60(b)(8).

2. The plaintiff has complied with all of the procedural prerequisites to suit under the statuses aforementioned, having filed in a timely complaint of employment discrimination with the U.S. Equal Employment Opportunity Commission and having received a Notice of Suit Rights dated June 11, 2021.

3. The plaintiff is a female resident of Middletown, Connecticut, who was born in 1965.

4. Defendant Raytheon Technologies Corporation is a corporation registered to do business in the state of Connecticut and engage in a business affecting Commerce. The Defendant Raytheon Technologies Corporation has a business site located at 400 Aircraft Road, Middletown, CT, 06457.

5. Pratt & Whitney is a wholly-owned subsidiary of Defendant Raytheon Technologies Corporation which designs, manufactures aircraft engines. It employs over 500 individuals in its East Hartford and Middletown, Connecticut, facilities.

6. The plaintiff was hired by Pratt & Whitney on October 21, 2021 as a Sr. Associate, Quality Assurance/CSMC Shop Quality Engineer reporting to Nicole Boney Sharp, Quality Assurance Manager.

7. On or about mid-July 2020, Ms. Boney-Sharp informed the team that she would be replaced by Mr. Noel Valentin.

8. Within days of the announcement that Mr. Valentin would be taking over, Mr. Valentin messaged the plaintiff out of the blue, in Spanish. There was nothing inappropriate about his message, but his overly familiar tone made the plaintiff uncomfortable.

9. During the first two weeks of October 2020, Mr. Valentin began taking over for Ms. Boney-Sharp. On or about October 14, 2020 Mr. Valentin had a 1 on 1 meeting with plaintiff. During that meeting, Mr. Valentin asked the plaintiff to close the door for privacy. Plaintiff left the door partially open because she was not comfortable with it being fully closed. Mr. Valentin told the plaintiff that she needed to improve her office social skills, and for her to be successful in her career she needed to learn to manipulate people, how to make people do things for her. Mr. Valentin then mentioned a previous female boss who would yell at and abuse him, but that when he started to invite her to lunch, dinner and to do things for her, she began to treat him better. Plaintiff understood that Mr. Valentin was grooming her to do the same for him.

10. On Thursday, October 15th, 2020, by the end of the day, past 4:30 PM, Plaintiff on her way to the bathroom coincided with Mr. Valentin and Mr. Valentin started to make conversation in Spanish and continued to keep conversation for over 20 minutes. Plaintiff was starting to feel uncomfortable and told that she needed to go. Plaintiff went to the bathroom and back to her desk, packed fast and left home. Mr. Valentin was still at his office when she left. On her way to the car, Mr. Valentin caught up with her in the middle of the hall. Mr. Valentin asked, "Maria do you cook? She answered, "I mostly do something quick." Although the plaintiff slowed down her pace to get Mr. Valentin to pass her, Mr. Valentin kept up with her, making the plaintiff uncomfortable. Plaintiff let Mr. Valentin exit revolving door first, but he waited for her outside. Mr. Valentin then asked where the plaintiff parked her car. Told him that she always park in the side parking lot, Mr. Valentin said his was in the front parking. Bid goodnight, he walked toward the front parking and the Plaintiff towards the side parking lot. Plaintiff waited for 5 minutes before moving her car making sure Mr. Valentin was not following her.

11. On Monday, November 2nd, 2020 the plaintiff found her desk disturbed. As per protocol had to notify her boss, so she called and informed Mr. Valentin. Felt bullied. Plaintiff had no idea of whom could possibly be doing this. At the end of the shift, that same day, while driving home plaintiff noticed the driver side rear window bent forward, had to fixed it. As soon as she parked

2

the car, checked, and found a scratch on the left side of front bumper. It looked like made with a knife or something thin. Plaintiff lives in an apartment complex, and has the habit of checking her car daily, car was fine in the morning. Plaintiff let know and sent the photo via phone to Mr. Valentin.

12. On November 18, 2020, Mr. Valentin contacted the Plaintiff while she was on vacation regarding a meeting at 8 am the next day. Plaintiff asked that the meeting to be held via ZOOM. Mr. Valentin insisted the meeting needed to be face to face at 8am. When plaintiff reported to work, the meeting had been changed to 11 am. Mr. Valentin asked Plaintiff to close the door to his office. Again, Plaintiff protested because of her concerns about COVID. Plaintiff has observed that Mr. Valentin meetings with her male coworkers, take place at their desks, rather than in his office. During the meeting Plaintiff was reprimanded for not reporting to work at 8 am, despite having frequently worked late and on weekends. Plaintiff was told that she has now to report to the worksite daily, regardless of COVID-19, and that she would also have a daily face to face meeting. None of the other team members (all male) were required to report daily to the work site. (The team rotated who would be on site because of COVID, but otherwise worked remotely). Plaintiff was told that she needed coaching, that she had potential but there were things she needed to fix. Plaintiff previous supervisor, Nicole, did not had problems with her performance.

13. On December 1, 2020 Plaintiff reported the harassing behavior to Rebecca Gillespie in Human Resources. Ms. Gillespie indicated the Plaintiff that she should not be reporting to the worksite every day, and that coaching meetings could take place via Zoom.

14. In retaliation due to the Plaintiff complaint to HR, on December 2, 2020, during a meeting, Mr. Valentin's finger caressed her hand as he handed her a piece of paper. After returning from a break, Plaintiff told him to never touch me again. Plaintiff also called Ms. Gillespie to report the incident. Plaintiff was later told that he denied it.

15. In Retaliation, thereafter, Plaintiff noticed that she was being left out of the loop by Mr. Valentin on email strings he sent to the team, and only brought her in at the end. His exclusion culminated in her removal from a very visible department meeting on December 10, 2020 for the Taylor Hobson project, supposedly because Mr. Valentin thought she was unprepared. Plaintiff had already submitted her presentation to a drop box folder before the meeting. Plaintiff later

3

learned from her colleagues that Mr. Valentin presented her work as his own. Shortly thereafter, Ms. Gillespie informed Plaintiff that the investigation concluded that the issues she was experiencing with Mr. Valentin were the result of a "miscommunication."

16. Again, in Retaliation for plaintiff complains to HR, on Wednesday, December 16th, 2020, during a scheduled 30 minutes morning meeting with the Plaintiff, Mr. Valentin berated her for an hour and a half. Mr. Valentin said that "complaining about me makes you look bad", and "if you documented your work in the same way you document my harassment and things I do, you will be doing your work with excellence". Mr. Valentin also threatened the Plaintiff to have HR present for their meetings. Mr. Valentin continued to keep the Plaintiff out of the loop following the company's return to work on January 2, 2021. Plaintiff again complained to HR, but was told during a meeting with HR that Mr. Valentin had a different version of events.

17. On Thursday, March 11th, 2020, in a Zoom meeting with Mr. Valentin and his boss, Glenn Malasmas, QA Director, Plaintiff was informed that she was not getting her annual 3% increase due to poor performance. Plaintiff told them that the only Performance Evaluation that she had seen in Workday does not say anything against her performance, Mr. Valentin feedback session is blank. Plaintiff stated that besides the Workday forms she had never seen or discussed a performance evaluation in Pratt & Whitney. That Plaintiff only received emails from previous supervisor, Mrs. Boney-Sharpe summarizing their coaching meetings and her improvements. Plaintiff has not received any coaching meetings feedback emails from Mr. Valentin. Mr. Malasmas implied that her coaching meetings were the Plaintiff "performance evaluations." Plaintiff replied that the coaching meetings held were used for going over daily work situations and how they were handled. Plaintiff understands that performance evaluation reviews are done when the boss gives written copy of the Performance Evaluation and both, supervisor and supervisee go over such document, and that to have such discussion is the Plaintiff right as an employee, and formally requested Mr. Malasmas to have all her Performances Evaluations sent to her.

18. In the manner described above, the Defendant has subjected the Plaintiff to discrimination on the basis of her sex (female) and age (born in 1965), a hostile work environment based on her sex (female) and age (born in 1965), and retaliation for having complained to Human Resources

4

about the said discrimination, all in violation of the Title VII of the Civil Rights Act of 1964, as amended, and all the applicable laws of the State of Connecticut.

19.  As a result, the plaintiff has suffered economic loss and emotional distress.

WHEREFORE, the Plaintiff charges and claims judgement against the Defendant.

THE PLAINTIFF,

BY: *Maria de Lourdes Rivera*
Maria Rivera
304 Woodbury Circle
Middletown, CT, 06457
(904) 651-2784
E-Mail: mariarivera11a@gmail.com

ATTEST:
A TRUE COPY

Lisa H. Stevenson
CT State Marshal
Indifferent Person

5

| | | |
|---|---|---|
| RETURN DATE: 9/21/2021 | : | SUPERIOR COURT |
| MARIA RIVERA | : | J.D. OF MIDDLETOWN |
| v. | : | |
| RAYTHEON TECHNOLOGIES CORPORATION | : | SEPTEMBER 1, 2021 |

## PRAYER FOR RELIEF

The Plaintiff claims judgement in an amount greater than fifteen thousand dollars ($15,000.00), exclusive of interest and costs, as follows:

A. Compensatory damages in an amount this court shall consider to be just, reasonable and fair;

B. Punitive damages in an amount this court should consider to be just, reasonable and fair;

C. Attorney fees and the cost of this action;

D. Such prospective and retrospective injunctive relief as this court shall consider to be fair and equitable.

THE PLAINTIFF,

BY: *[signature]*
Maria Rivera
504 Woodbury Circle
Middletown, CT, 06457
(904) 651-2784
E-Mail: mariarivera11a@gmail.com

ATTEST:
A TRUE COPY

Lisa H. Stevenson
CT State Marshal
Indifferent Person

6

| | | |
|---|---|---|
| RETURN DATE: 9/21/2021 | : | SUPERIOR COURT |
| MARIA RIVERA | : | J.D. OF MIDDLETOWN |
| v. | : | |
| RAYTHEON TECHNOLOGIES CORPORATION | : | SEPTEMBER 1, 2021 |

## STATEMENT OF AMOUNT IN DEMAND

The amount in demand, exclusive of interest and costs, and exceeds the sum of Fifteen Thousand ($15,000.00) Dollars.

THE PLAINTIFF,

BY: _/s/ Maria de Lourdes Rivera_
Maria Rivera
304 Woodbury Circle
Middletown, CT, 06457
(904) 651-2784
E-Mail: mariarivera11a@gmail.com

ATTEST:
A TRUE COPY
Lisa H. Stevenson
CT State Marshal
Indifferent Person

7